# United States Court of Appeals for the Federal Circuit

2007-1214

OATEY CO.,

Plaintiff-Appellant,

v.

IPS CORPORATION,

Defendant-Appellee.

Jay R. Campbell, Renner, Otto, Boisselle & Sklar, LLP, of Cleveland, Ohio, argued for plaintiff-appellant. With him on the brief were Donald L. Otto and Mark C. Johnson.

Joseph A. Yanny, Yanny & Smith, of Los Angeles, California, argued for defendant-appellee.

Appealed from: United States District Court for the Northern District of Ohio

Judge Kathleen M. O'Malley

# United States Court of Appeals for the Federal Circuit

2007-1214

OATEY CO.,

Plaintiff-Appellant,

v.

IPS CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Ohio in case no. 1:03-CV-1231, Judge Kathleen M. O'Malley.

_____

DECIDED:  January 30, 2008

_____

Before NEWMAN, SCHALL, and LINN, Circuit Judges.

NEWMAN, Circuit Judge.

The Oatey Company appeals the summary judgment of the United States District Court for the Northern District of Ohio, ruling that U.S. Patent No. 6,148,850, owned by Oatey, is not infringed by IPS Corporation.  The patented invention concerns washing machine outlet boxes, which are boxes that are installed in wall recesses during construction of a house in order to collect hoses for the input and output water flow of washing machines and other household appliances, particularly air conditioners.  After a

Markman hearing, the district court construed disputed claim terms and then granted summary judgment of non-infringement in favor of IPS, and dismissed IPS's counterclaims without prejudice.[1] We now modify the district court's claim construction, vacate the summary judgment of non-infringement, and remand for further proceedings.

***The Patented Invention***

Washing machines require inputs of hot and cold water, and produce waste water that is expelled through a pipe or hose. In the plumbing of older residential buildings the water supply pipes and the drain pipes or hoses were not always grouped together, and often the drainage was expelled into a sink basin or tub. Newer homes, however, often include a built-in "outlet box" placed between support studs in a wall, the box having input ports for receiving hot and cold water pipes and outlet ports for drainage.

In plumbing designs until the 1980s, the outlet box typically included a single drainage port that in some buildings was designed to receive waste water from more than one appliance. This design was common in the Southwest where air conditioning equipment was often located on the roof and the condensate line fed into the outlet box drain port. Some municipal plumbing codes were changed to prohibit designs in which other appliances shared the drain port used by a washing machine. As a result, plumbing

---

1  Oatey Co. v. IPS Corp., No. 1:03 CV 1231, 2006 WL 581240 (N.D. Ohio Mar. 8, 2006) (construing claims); Oatey Co. v. IPS Corp., No. 1:03 CV 1231 (N.D. Ohio Oct. 30, 2006) (clarifying claim construction); Oatey Co. v. IPS Corp., No. 1:03 CV 1231 (N.D. Ohio Feb. 23, 2007) (summary judgment).

supply manufacturers such as Oatey and IPS designed outlet boxes with separate ports to receive the drainage of appliances in addition to the washing machine.

In 1999 Oatey filed the '850 patent application, directed to an outlet box that accommodated two output drain ports to comply with plumbing codes, and that also had a "tailpiece" to collect the effluent from these ports and release it into a single drain pipe. The structure was designed for ease of installation, and Oatey explains that the prior outlet boxes required that the installer perform several welds to join separate drain pipes from the two drain ports into a single pipe below the outlet box, as illustrated in the district court's opinion on claim construction:



**PRIOR ART**

Oatey, 2006 WL 581240, at *6 (describing prior art). Oatey points to the six welds in this standard prior design, and explains that for the '850 patent a single tailpiece is part of the

outlet box and the installer need perform only a single weld, connecting the drain pipe to the tailpiece. Oatey states that its design is recognized in the industry as a useful innovation and is commercially successful, displacing prior designs. The Oatey structure is illustrated in Figure 1 of the '850 patent:



FIG. 1

The tailpiece (22) is affixed to the bottom wall (34) and receives a washing machine drain hose (18) and a condensate line from an air conditioner (20). The specification states that the tailpiece is preferably integrally formed with the bottom wall, but alternatively may be welded to the bottom wall. The interior of the tailpiece contains two fluid passageways (24) and (26), which feed into a drain pipe (28). At the mouths of these fluid passageways are two juxtaposed drain ports, shown in Figure 2 at (54) and (56) in a top-down view of the bottom wall:



FIG. 2

Figure 2 shows an optional test cap (52) that fits into a generally oblong opening (50) in the bottom wall. The test cap serves to temporarily seal this opening for pressure testing of the installation. The base of the test cap is welded to the bottom wall and two frangible knockout portions are removed to form the two juxtaposed drain ports (54) and (56).

The '850 patent drawings also illustrate an embodiment wherein the two juxtaposed drain ports are shaped by the sides of the oblong opening in combination with a dividing wall provided by the tailpiece, as seen in Figure 3 which shows the outlet box without a test cap:



FIG. 3

Figure 3 shows a dividing wall (72) that separates the tailpiece into the two fluid passageways (24) and (26), and includes a trapezoidal step (76) at its upper edge. The trapezoidal step (76) and the boundaries of the opening (50) define two drain ports at the mouths of two fluid passageways. The '850 specification explains that this trapezoidal step also accommodates the use of a test cap to pressure-test the installation.

## *Claim Construction*

IPS makes and sells outlet boxes that Oatey states infringe claims 1, 2, 3, 5, and 17 of the '850 patent. Claim 1 is representative, with emphasis added to the clause whose meaning was disputed and whose interpretation was stipulated to determine non-infringement:

> 1. A washing machine outlet box comprising a housing including a bottom wall, **first and second juxtaposed drain ports in said bottom wall**, and a common tailpiece for both of said drain ports extending from said bottom wall, said tailpiece extending completely around both of said drain ports in said bottom wall, said tailpiece having an outlet for connection to a drain pipe.

The district court postponed its claim construction until this court issued its *en banc* decision in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005). The Phillips decision confirmed that "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Id. at 1312 (citing Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In addition, Phillips confirmed the importance of the specification in claim construction, 415 F.3d at 1315, and that, in construing the claims of a patent, the court should also consider the patent's prosecution history if it is in evidence, id. at 1317.

The district court construed the clause "first and second juxtaposed drain ports in said bottom wall" as "two separate identifiable physical elements that are adjacent or near each other." The court further determined that this clause requires that there be two separate physical openings in the bottom wall of the outlet box, as shown in Figure 2, and not a single opening divided by a wall in the attached tailpiece, as shown in Figure 3. The district court rejected Oatey's position that the term "first and second juxtaposed drain ports" of claim 1 encompasses both of the embodiments in the drawings. The court determined that the claim requirement that the tailpiece extend "from" the bottom wall prevents any part of the tailpiece, i.e. the dividing wall, from being "in" the bottom wall, whereas claim 1 requires that the two juxtaposed drain ports are "in the bottom wall."

The district court pointed to claims 2 and 17, which state that the fluid passageways in the tailpiece receive liquid from the drain ports; the court concluded that this claiming format reinforces the conclusion that the drain ports are distinct structures from the fluid passageways, and further supports the construction of claim 1 to limit the drain ports to distinct structures formed in the bottom wall of the outlet box. The court held that the drain ports cannot be defined using the wall projecting from the tailpiece despite the illustration of such a structure in Figure 3. Thus the court concluded that the claims, correctly construed, exclude the embodiment shown in Figure 3. On this claim construction the court granted summary judgment of noninfringement, for the parties stipulated that Oatey cannot meet its burden of proving infringement if the claims exclude the embodiment shown in Figure 3.

DISCUSSION

The district court's claim construction receives plenary review, including any factual findings on which the claim construction depends. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (*en banc*); see Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370 (1996).

Oatey argues that the district court erred both in its claim construction and in its determination that the structure depicted in Figure 3 is outside the scope of claim 1 even as the court construed it. Oatey states that the descriptive text describing the juxtaposed drain ports includes the embodiments in the drawings, and that a person of ordinary skill in the field of the invention would understand that the structure in Figure 3 is an embodiment of the invention as set forth in the specification and in claim 1.

IPS responds that regardless of the specification's description and the presentation of Figure 3 as an embodiment of the invention, the patent provides no definition for "first and second juxtaposed drain ports" that overrides the ordinary meaning of those terms. IPS states that the "ordinary meaning" requires separate and distinct ports in the bottom wall itself, and not merely partition of an elongated opening. Thus IPS states that the district court correctly construed the claims in accordance with their plain meaning.

We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification. E.g., Verizon Servs. Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1305 (Fed. Cir. 2007) (rejecting proposed claim interpretation that would exclude disclosed examples in the specification); Invitrogen Corp. v. Biocrest Mfg., L.P., 327 F.3d 1364, 1369 (Fed. Cir. 2003) (finding district court's claim construction erroneously excluded an embodiment described in an example in the specification, where the prosecution history showed no such disavowal of claim scope); see also Vitronics Corp. v.

Conceptronics, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996) (finding that a claim interpretation that excludes a preferred embodiment is "rarely, if ever, correct"). However, we have interpreted claims to exclude embodiments of the patented invention where those embodiments are clearly disclaimed in the specification, see SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337, 1344 (Fed. Cir. 2001) (excluding subject matter from claim scope based on clear disclaimer in the specification), or prosecution history, see North Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1345-46 (Fed. Cir. 2005) (excluding from claim scope certain embodiments in the drawings based on disclaimer during prosecution).

There is no issue in this case of disclaimer or estoppel during prosecution, as would preclude recovery of such lost scope, and IPS offers no support for its contrary suggestion. The specification states that the tailpiece is formed with or welded to the bottom of the outlet box and surrounds the oblong opening, supporting the patentee's construction of the claims to include the drain ports formed by the oblong opening and the divider. Moreover, the specification explicitly discloses "that if a test cap is not used, the oblong opening in the bottom wall (in conjunction with the tailpiece) may itself define the drain ports." '850 patent, col. 2, lines 30-32; see also id. col. 4, lines 23-26. At lease where claims can reasonably to interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary." IPS cannot support its statement that the structure of Figure 3 was disclaimed or subject to prosecution history estoppel.

IPS states that inclusion of Figure 3 in the scope of claim 1 would encompass the prior art, which shows a single drain port; this argument requires the construction that

Figure 3 shows a single drain port. However, Figure 3 shows the structure whereby the two juxtaposed drain ports are formed, and the claims require two drain ports; we discern no merit to the argument that including Figure 3 in claim 1 would include prior art.

We conclude that the embodiment in Figure 3 was improperly excluded from the scope of claim 1. See MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1333 (Fed. Cir. 2007) (rejecting claim construction that would exclude embodiments illustrated in the drawings); Lava Trading, Inc. v. Sonic Trading Mgmt., LLC, 445 F.3d 1348, 1353-55 (Fed. Cir. 2006) (rejecting claim construction that "excluded embodiments disclosed in the specification" including embodiments in the drawings); Vanderlande Industries Nederland BV v. United States Int'l Trade Comm'n, 366 F.3d 1311, 1320, 1322 (Fed. Cir. 2004) (declining to limit the term "glide surface" to a specific embodiment where the descriptive text includes other embodiments). The recitation in claim 1 that the drain ports are in the bottom wall does not exclude the Figure 3 embodiment whereby the ports are formed using a dividing wall provided by the tailpiece. In Figure 3 the juxtaposed drain ports are defined by the perimeter of the oblong opening in conjunction with the dividing wall.

IPS argues that consideration of certain other claims serves to restrict the scope of claim 1. However, claims 2 and 17 do not restrict the construction of claim 1. It is not necessary to decide the meaning of "fluid passageways" in these subsidiary claims in order to construe claim 1. See Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017, 1023 (Fed. Cir. 1987) (explaining that there is a presumption of difference in scope among a patent's claims, but claims may cover the same subject matter in different words). Although the term "first and second juxtaposed drain ports in said bottom wall" defines distinct openings, this does not exclude the distinct openings formed as shown in the

structure of Figure 3.  The district court erred in construing claim 1 as excluding this embodiment.  The claim construction is modified accordingly.

The summary judgment based on the district court's claim construction as the basis for the stipulation of non-infringement is vacated.  The case is remanded for further proceedings.

<u>VACATED AND REMANDED</u>